Thank you, Your Honors. May it please the Court, my name is John Berry and I represent the petitioner, Laura Steele. This case is a very limited and fairly unique kind of matter In my research, I was not able to find another case really involving a condition of employment and due process. And the reason why we're here today is it appears in the MSPB's board decision, they were unable to do so either. And essentially, as noted in the government's brief at page 37, it appears that the board made a conscious decision not to decide whether due process actually applied to the petitioner's case. What additional process, if you could just summarize it, do you believe was due on the history of this case? Yes, Your Honor. The petitioner, who was a law enforcement ranger for approximately four years prior to having her commission taken away, was not given a notice of what her performance issues were prior to the review team that met with her. And she was told that she was going to be able to give a response later. She was cut off by the chair of the review team. She never had a chance to find out what the real I don't understand how the record supports that conclusion. I mean, frankly, we've seen a lot of these personnel cases, and not ones necessarily like this, but certainly performance-based cases. And here, as I understand the findings made by the board, there was repeated reviews. She was told she had her period extended for reasons. She was continuously in the process apprised of what was sufficient and what was not, culminating in a meeting telling her about it and giving her an opportunity to respond. I understand you take issue with, well, she didn't have the chance to finish what she was going to say and say everything she wanted. But that's a little thin when we're talking about looking globally at whether or not due process. I mean, it's hard for us to get into the weeds about whether she was given enough time to say what she wanted. But I'm missing why this wasn't sufficient. That's an excellent question, Your Honor. Because most cases that I've seen with respect to disciplinary actions are fairly concise. I mean, in this case, there were so many documents, there were so many reports that she was only able to provide a general sort of outline defense as to what the issues might have been. No one during the review team meeting said, hey, you've got these issues, these issues, those issues. That's not what the record shows. The record shows that even the officer in charge that was with her, the lead trainer, was giving her almost minute-by-minute feedback, redoing things and then discussing with her what had happened, what had occurred, and what some of the shortfalls were. Excellent question, Your Honor. With respect to this, this is a case of too much. I mean, there were a number of items in the record. There were a number of criticisms that didn't ultimately end up in the recommendation. There was too many, too much information, too much feedback given to her? That's your... Yes, Your Honor. When you look at the over 600 pages... I'm about to argue and there was no feedback. No, what I'm saying is that when you have no specifics as to what the actual issues are, you have a number of allegations, some good, some bad in the daily observation report. She did have a number of specifics. She had ratings, and certain ratings were below three, and that's why they extended her period, which she was aware of. I mean, I did see between the lines reading your brief that, yeah, it seemed to me your argument was she got too much due process and therefore it wasn't enough. And I guess I understand that at some level, but I don't see... I mean, I guess you could overwhelm someone with just giving them so much information that they can't even understand what you're talking about, but I don't see that demonstrated by the factual woman. She knew what her job was. She knew what she was doing. She had training. She got feedback. I don't see how too much information here can satisfy the fact that there was no due process because there was too much. Well, I think that in some of the cases that I found, and there haven't been a lot, one was Cheney 479 F3, 1343, and a Merit Systems Protection Board case, Mason 70 MSPR 584. What was interesting about those cases, and those are not exactly similar to what I have, but they talked about notice requiring something more, something specific, you know, dates and times. And with respect to this case, there was a lot of feedback, as the court has recognized. It's extensive, and this record is very extensive. But when it comes to a point in those cases, it seems to me that when you have so many issues, and you don't know what the agency's looking at before they make a decision to take your law enforcement officer commission away and forbid you from ever holding a commission with the Department of Interior, that they should at least say, hey, listen, here's what your issues are. Please respond. Let me ask you this then. So her training period was extended, and I guess it's generally acknowledged that it was extended because she wasn't going to make it. I said, let's give you another shot. We're going to extend your training period. During that training period, it appears to me that they focused on just certain aspects of the training, voice command, the presence, you know, controlling the crowd, that type of thing. That's not specific feedback? I mean, doesn't that alert her to exactly what were her problems like? Well, with respect to that question, and that's a good question, Your Honor, when I looked at the record, and we didn't have this available to us prior to the decision being made at A998 through A1001, there were specific recommendations that were given. And some of these recommendations didn't necessarily relate back to the last portion of her extension process. So I guess the point being is when I was looking at especially A998, I was said they issued a recommendation, which if they had given this recommendation to Officer Steele, the petitioner, I think that that would have satisfied due process because she would have been able to say, okay, you have an issue with officer safety, acceptance of feedback, problem solving in here, please respond. And I think that wasn't done here. And I think that more importantly, I think the board was in a quandary about how to deal with that issue because reviewing the board's decision, which is at A6, it says moreover, we are aware of no case in which in a situation where an appellant is removed for failure to meet a condition of employment, the board is subjected the underlying process to a due process analysis. But you're looking at some of the feedback on those general terms, like officer safety. But during her training, one of the problems was, for example, when she failed to ask a suspect whether the suspect was harmed or not. And they went over that issue. I mean, that goes to the safety of the officers, doesn't it? I mean, isn't that exactly what you're referring to? Well, we didn't know. I mean, and there's testimony in the record that the petitioner didn't know what the exact issues were before the review board. She signed the daily observation reports with the exception of the last one. So she had some idea that there was a fair amount of negative feedback. That is clear. What wasn't clear is when she went into the review team meeting, she tried to figure out what the issues were that she was supposed to address. She spoke for about five minutes and then they started asking her questions. But nobody ever told her, hey, listen, this is what the issues are we want you to address. And she asked. Why not a reserved rebuttal? Yes, Your Honor. Thank you. May it please the Court. This is essentially a substantial evidence case. The only issue that Ms. Steele challenges is the procedure before the review team. But I think as the questions have shown, there were daily contemporaneous written ratings by the trainers of her performance based upon the reference manuals that set out in great detail how the raters should rate the trainee. There were narratives. The daily observation reports were maybe four or five pages, not very specific. And she signed each one without ever disagreeing except for the very last time. At the review team meeting, and again, this was initiated based on the reference manual that sets out in Chapter 8 of the trainer manual how this review team should function, headquarters sent three members that had not been involved in her training unbiased. They testified that they reviewed all of the underlying documentation. They interviewed all but one of the trainers. They interviewed her. She testified she had 90 minutes before the review team. They asked her to focus on the Phase 3 extension in Phase 3, which was critical to enabling her to perform as a solo park ranger. Contrary to what Petitioner is arguing, during the Phase 3 extension, there was extensive remedial training focused upon the performance deficiencies that had been established in terms of officer safety and survival investigative skills. Ms. Steele testified that yes, even on the last day in the DOR number 43, there were two incidents. She admitted that she did not ask the appropriate questions of this potential victim of domestic violence. She admitted that, and we quoted this in our brief, that when they encountered a group of intoxicated campers, actually she walked away. Her trainer had to intervene so they didn't drive away. When they searched one of the campers, Ms. Steele admitted that she missed, she did the improper search. She missed a cigarette lighter in this camper's jacket. I appreciate you're joining the argument here. It just seemed to me in your brief you were fighting another war. And that is that, I mean, the board here said, and you were arguing that there was no due process requirement that applies to this training program piece of her demotion process. If we reject that, you're still arguing that on the facts here it was harmless error not to apply due process because she clearly got an abundance of due process through this. That's absolutely correct, Your Honor, because in the review team process, which is really the only thing at issue here, there was sufficient notice of what her performance deficiencies were and meaningful opportunities during the review team process as well as before to address it. Her argument that she had to... Is the government acknowledging that she was entitled to due process in this proceeding? No, not in the review. We're not acknowledging that because, as Ms. Steele argued, there's no case law to support that. And to the extent there were any errors at all, it was harmless error as the board concluded. And in fact, the board, the way Petitioner characterized it at page 11 of her reply brief, the board effectively decided that due process did not apply. I think that's really not the issue here. The issue here is, in the review team process, did she have sufficient notice and meaningful opportunities? No, so what you're saying is they said due process didn't apply, but the issue is, even if they were wrong, was it harmful given that she got sufficient due process in this circumstance? And it was not harmful. She asked for a remand to start this process all over again, but given the record here that is replete with contemporaneous documentations and the administrative judge credited the testimony of the field training lead, Mr. Jacobs, about the contemporaneous feedback that she got, not only written but in discussions, that there's absolutely no need for in this review team process that was set up on a national basis for a park service training of park rangers. The review team came out to make sure that the trainers had done all the training correctly, that she was informed. There was testimony that they asked her along the way, particularly during phase three and the phase three extension, how are we doing? Is there are you okay with all this? And she went along and said okay. And one of the key things is that her claim that she had to guess really lacks merit because at the hearing, well before the review team, she sent in these long written rebuttals that she claimed were based upon contemporaneous notes she took along the way that she never shared with her trainers. And she never really disputed the facts of what happened, but she just wanted to challenge some of the evaluations. But essentially, the only issue here is was she informed of her performance deficiencies sufficiently enough so she could respond? Did she have meaningful opportunity to respond to the review team and the record? Well, that's only an issue if the government is wrong and there is a due process required, right? No, actually what applies here is not due process, but the well-established manuals that govern this program. It's the agency's policies. They're set nationally. They're objective. They're detailed. That's what applies is the agency's internal procedures that govern the review team, which the review team found were And to the extent that the review team sent a summary up the chain, what the petitioner referenced in the argument, there was nothing new in that from all of the evidence that had been developed in the record during the training. So there was nothing new. It's not like there was some surprise. You're drawing a distinction, I gather, between due process of law and the process of an adequate opportunity to improve. But is that a reasonable distinction to draw? I think here what we're relying on is not due process. It is the agency's well-established program, and this deal is on notice of it, of how the federal field training and evaluation program would be run, how she would be rated. Notice of the perceived inadequacies and opportunities to improve, whatever that's called. Whatever it's called. I gather there are cases that that was inadequate. I'm sorry, Your Honor? I gather that the petitioner's position is that there was inadequate notice of the perceived flaws and an inadequate opportunity to improve. Whether you call that due process of law or call it something else, it's certainly fundamental to government employment, is it not? That's what she's, yes, and that's what she's claiming, that she had to guess at her performance deficiencies, and she continues that argument in her reply brief. And that the review team, that the due process was they, even though they gave her 90 minutes with the three-member review team, it wasn't enough. She wanted to read verbatim her rebuttals. The review team members, two at least, testified that they had all read the underlying documentation for two days before the review team meeting, and they had received her rebuttals. They then read the rebuttals, so it's not as if she wasn't heard. She was heard. She was allowed to submit her rebuttals. They considered it fully, and the administrative judge made detailed findings of the board's decision that she had sufficient notice of her performance deficiencies and that the review team process was fair. And that's really all that's at issue in this case. So we respectfully request that the court affirm the decision of the board. Thank you. Thank you, Your Honors. I think that the court should apply due process to this case, because one of the fundamental issues that Petitioner brings, and they're so linked together, is the fact that... Can you identify the interest that's protected by the due process clause in this case? Sure. Both federal employment in terms of a position as a law enforcement officer, which the Petitioner, in order to get the position in the first place in 2007, had to attend Northern Arizona University to get a law enforcement certificate, which is in the record, and then she was able to get a position. She then functioned as a full police officer for four years. After functioning for four... It seems to me that that's a lot of contingencies. I mean, in order to keep her license, she had to pursue a higher license. In order to keep a job, she had to obtain the higher license. And if she did not get the higher license, she couldn't keep her former job. Plus, she was out of... So it doesn't seem to me that she actually possessed an interest that's protected under the due cause. Your Honor, that's an excellent question. I think she did. I think that when someone invests so much time in becoming a federal law enforcement officer and obtains a commission, works as a law enforcement officer, performing all the duties of a law enforcement officer for four years, and then has a review team meeting in which she's not presented with the issues and the recommendations with respect to her removal, which then goes to the superintendent, who testified, I believe in the record, at A-70, that he wasn't aware that she wasn't allowed to present her full response, I think that you have an issue. Because not only did she lose her position as a law enforcement officer, not only was she let go from training, but she was then banned from ever holding a law enforcement officer position with the Department of Interior. I think that there are significant interests. And when someone invests that much, as we've argued, into becoming a law enforcement officer, I think that that's important. And I don't think we can minimize one of the issues that came up in the briefs, which is the deciding official's participation in this. I mean, the government did make a point in the briefs that there were two separate components of the agency. Well, the record makes it clear that the deciding official back at the home park of the petitioner was involved in the decision to remove her from training. And the record further shows at A-203 that one of the interesting points is that the revisions to the FTEP manual, which occurred in 2009, was supposed to bring in the home park and the deciding official into the process to decide whether or not a trainee should be remediated or let go. So I think that those are critical points. And I would ask, in closing to this honorable court, that especially because the board sort of left it as a void, as acknowledged by the government's counsel on page 37 of their brief, the board didn't fully address whether or not this kind of condition of employment was subject to the due process procedure. And I argued in our briefs that it was. And I respectfully request that the court either remand to the board with instructions to remand for a correct constitutional procedure and award, or in the alternative, remand to the board with instructions to look and actually make a decision on the issue of due process. Let me ask you this question. Haven't you conceded to the merits of the case? You're not challenging that they made the wrong decision, correct? Well, I believe we would challenge if this was remanded. The appeal is only to that they did not extend due process. That's correct. I don't see that you're challenging the actual merits of the decision. Not before this court. And we did not allege harmful error. We did not allege patent unfairness in this appeal. The errors with respect to those... You're not challenging the merits, and we find in your favor, what is there left to do? What's left to do, Your Honor, is to remand it to the agency so that they can provide her with notice of her deficiencies and an opportunity to respond. If they still go ahead and they remove her following giving her due process, then I think that it would be hard to appeal. Thank you.